#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOE D. MASSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-546-GKF-PJC |
| | ) |
| MATRIX SERVICE COMPANY, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

Before the court is the Motion to Reconsider Order of July 12, 2013 [Dkt. #18] filed by defendant Matrix Service Company ("Matrix"). Matrix asserts that "new evidence, previously unavailable" warrants reversal of the court's July 12, 2013 order [Dkt. #14] denying its Motion to Enforce Settlement Agreement [Dkt. #7]. Plaintiff Joe D. Massey ("Massey") objects to the motion. [Dkt. #21].

As the Tenth Circuit has acknowledged, the Federal Rules of Civil Procedure do not recognize a "motion to reconsider." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). However, Rule 54(b) of the Federal Rules of Civil Procedure provides that a court may revise an interlocutory order at any time before the entry of a final judgment. "To determine the propriety of reconsideration under Rule 54(b), courts apply the legal standards applicable to a Rule 59(e) motion to alter or amend a judgment." *Bays Exploration, Inc. v. PenSa, Inc.*, 2011 U.S. Dist. LEXIS 63476, at *3 (W.D. Okla. June 15, 2011). A Rule 59(e) motion is the appropriate vehicle "to correct manifest errors of law or to present newly discovered evidence." *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194,

1200 (10th Cir. 2011) (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)). A motion to reconsider under Rule 59(e) is subject to the court's discretion. *See Richmond v. Crow*, 61 F.3d 916, 1995 WL 350800 at *1 n. 2 (10th Cir. 1995) (unpublished). Such a motion "is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple." *Syntroleum Corp. v. Fletcher Int'l, Ltd.*, No. 08-CV-384-JHP-FHM, 2009 WL 761322, at *1 (N.D. Okla. March 19, 2009).

Where—as here—a party seeks Rule 59(e) relief based on additional evidence, the movant must show either that the evidence is newly discovered or if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence. *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1213 (10th Cir. 2012). Further, in order to support a Rule 59(e) motion, the aggrieved party must demonstrate "how newly discovered evidence warrant[s] relief." *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1300 (10th Cir. 2002).

"Because settlement agreements are contracts, issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013). And "[u]nder Oklahoma law, settlement agreements, which may be oral or written, are controlled by the rules of offer and acceptance and of mutual assent which control any issue of contract formation." *Id.* (citations omitted). A valid contract requires an offer, acceptance, valid consideration and mutual assent. *Brewer v. City of Seminole*, 204 P.3d 87, 89 (Okla. 2009). "Mutual assent" means a "meeting of the minds . . . on all material parts of the agreement." *Watkins v. Grady County Soil and Water Conserv. Dist.*, 438 P.2d 491, 494 (Okla. 1968).

Massey, a former Matrix employee, filed suit against Matrix on October 3, 2012, for alleged violations of the Americans with Disabilities Act of 1990 ("ADA"). On November 15, 2012, the parties, through counsel, agreed to settle the case for $20,000. On November 16, 2012, Matrix's attorney sent Massey's attorney a proposed written settlement agreement. [Dkt. #7, Ex. B]. On December 11, 2012, Massey rejected the proposed written agreement, asserting it contained material terms he had not agreed to, including an agreement by plaintiff to "fully defend and indemnify Matrix for any taxes, penalties, fines, assessments and other tax liabilities (plus costs and expenses, including attorneys' or accountants' fees), if any, claimed by any taxing authority as a result of Massey's receipt of any portion of the Settlement Payment." [Dkt. #7, Exs. B, D].

At the conclusion of a hearing on July 12, 2013, the court denied the Motion to Enforce Settlement Agreement, holding that the parties never reached a meeting of the minds about indemnification, a material part of the proposed written agreement. [Dkt. #14]. On July 18, 2013, counsel for Matrix sent Massey's attorney a letter offering to settle for $20,000 and proposing revisions which removed the requirement that Massey defend and indemnify Matrix for taxes, penalties, fines, assessments and other tax liabilities as a result of the settlement payment (leaving only the requirement that Massey hold Matrix harmless for such liabilities). [Dkt. #18, Ex. B]. On July 30, 2013, Massey's counsel rejected the proposed settlement offer and stated, "Mr. Massey is not interested in further settlement dialogue." [Dkt. #18, Ex. C].

Matrix's July 18, 2013, settlement offer and Massey's response comprise the "new evidence" relied upon by Matrix in the pending motion. Matrix contends, "Plaintiff's refusal to settle after the contested terms were resolved in his favor, but without an increase in the settlement amount, clearly demonstrates Plaintiff did not oppose enforcement of the settlement

3

agreement because of lack of a meeting of the minds as to material terms" and instead "Plaintiff opposed enforcement because, after he had entered into a binding agreement, Plaintiff decided he would rather continue litigating this case in a transparent attempt to get more money out of Matrix."  [Dkt. #18 at 5-6].  Matrix asserts the court should enforce the settlement agreement to prevent "manifest injustice."  [*Id.*].

The court rejects Matrix's argument for two reasons.  First, the post-hearing exchange of letters appears to be newly *generated* evidence rather than newly *discovered* evidence that was previously unavailable.  Second, and more importantly, under state contract law, plaintiff is not now bound to accept the settlement offer of July 18, 2013.

As stated above, issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law.  *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013).  Oklahoma law provides that "[t]he consent of the parties to a contract must be:  1. Free. 2. Mutual; and 3. Communicated by each to the other." 15 Okla. Stat. § 51.  "Consent is not mutual unless the parties all agree upon the same thing in the same sense. " 15 Okla. Stat. § 66. "It is basic in contract law that an acceptance will not bind the offeror unless it is unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer."  *Ollie v. Rainbolt*, 669 P.2d 275, 280 (Okla. 1983).  "An acceptance that modifies the terms of an offer is a counteroffer and constitutes a rejection of the initial offer." *In re De-Annexation of Real Property*, 204 P.3d at 89.

Applying these basic laws of contract, one of two things happened in November, 2012: (1) On November 15, 2012, the parties (although they orally agreed to a settlement amount of $20,000) did not reach mutual consent with respect to other material terms of the contract; thus, when defendant sent plaintiff a proposed written agreement with the objectionable

4

indemnification language, it was conveying an offer, which plaintiff rejected; or (2) Plaintiff on November 15, 2012, orally offered to settle the case for $20,000; defendant's proposed written agreement with the objectionable language was a counteroffer; and plaintiff rejected the counteroffer.  Either way, no contract existed as of December 11, 2012.  Matrix's July 18, 2013, letter constituted a new offer, which, though it likely would have been acceptable had it been conveyed on November 15, 2012, plaintiff had the legal right to reject.

 Matrix has failed to demonstrate how its "new evidence" warrants relief.  *See Computerized Thermal Imaging,* 312 F.3d at 1300.

Defendant's Motion to Reconsider [Dkt. #18] is therefore denied.

ENTERED this 11th day of October, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT